**COMMONWEALTH of Pennsylvania,**
**Appellee,**

· v.

**Timothy McCALMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 7, 2002.

Filed March 20, 2002.

Alexander H. Lindsay, Jr., Butler, for appellant.

Randa B. Clark, Asst. Dist. Atty., Butler, for Com., appellee.

BEFORE: DEL SOLE, P.J., BENDER and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Timothy McCalman appeals from the November 29, 2000 aggregate judgment of sentence of seventy-seven (77) to one hundred fifty-four (154) months incarceration imposed subsequent to a jury trial during which appellant was found guilty of two counts of aggravated assault,[1] three counts of terroristic threats,[2] four counts of recklessly endangering another person (REAP)[3] and one count of criminal mischief.[4] We note also that the trial court found appellant guilty of the summary offenses of criminal mischief (two counts) and driving while under suspension (one count). Record, verdict, No. 22.

¶ 2 The record indicates that on March 21, 2000, appellant was involved in a confrontation with his former girlfriend, Mandy McConnell,[5] and her new boyfriend, Joseph Burger. During the incident, appellant pointed a gun in Burger's face. Shots were subsequently fired; one of which entered Burger's car, narrowly missing Mandy who was sitting in the backseat. Patrick Bender, Burger's friend, was seated in the front of Burger's car. Appellant forced Mandy out of the

---

1.  18 Pa.C.S.A. § 2702(a)(1).

2.  *Id.*, § 2706.

3.  *Id.*, § 2705. We note that concurrent sentences for two counts of REAP were vacated when appellant's motion to modify sentence was granted in part. This had no effect on the aggregate sentence nor does it affect this appeal.

4.  *Id.*, § 3304(a)(1).

5.  Because there are two individuals with the last name of McConnell, we will refer to them by their first names, Mandy and John.

car and fired two shots into the tire of her car parked nearby. Mandy's brother, John McConnell, who had been riding with appellant in his car, intervened, and Burger and Mandy were able to get away. Appellant shot at them as they ran for safety. (N.T., 10/28/00, at 21–28, 56.)

¶ 3 Appellant raises five issues on appeal: [6]

[1.] Was there insufficient evidence presented at trial to support the requisite criminal intent to support a conviction for aggravated assault?

[2.] Was the jury's verdict finding that [appellant] was guilty of both aggravated assault and reckless endangerment yet not guilty of attempted homicide impermissibly inconsistent?

3. Was there insufficient evidence presented at trial to support the convictions of terroristic threats when no verbal or written threats were articulated by the [appellant], Timothy McCalman?

4. Was it error for the trial court to allow the Commonwealth to submit the case to the jury under 18 Pa.C.S.A. § 2702(a)(1) because § 2702(a)(4) is more applicable?

5. Did the trial court err when it did not give [appellant] credit for the period of time he was on house arrest?

Appellant's brief at 4.

¶ 4 Initially, as appellant's first and fourth issues both concern his conviction for aggravated assault, we will address them simultaneously. Appellant first argues the evidence was insufficient to support his conviction for the crime of aggravated assault as to Mandy McConnell and Joe Burger. Appellant argues he lacked the specific intent necessary to sustain a conviction for aggravated assault. Appellant avers the shots he fired were

random in nature and were not directed at the fleeing couple.

Our standard in reviewing a sufficiency of the evidence claim is that we must view the evidence in a light most favorable to the Commonwealth, and determine whether the evidence presented at trial, including all reasonable inferences that may be drawn therefrom, was sufficient to prove all of the elements of the crime, which appellant challenges beyond a reasonable doubt. Further, we must keep in mind that the credibility of witnesses and the weight to be accorded to the evidence produced are matters within the province of the trier of fact, who is free to believe all, some or none of the evidence.

*Commonwealth v. Passarelli*, 789 A.2d 708, 716 (Pa.Super.2001) (citations and quotations omitted).

¶ 5 A person is guilty of aggravated assault under 18 Pa.C.S.A. § 2702, **Aggravated assault**, (a)(1), "if he (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." The evidence presented in this matter showed appellant confronted Burger at a distance of a few feet and pointed a handgun directly in Burger's face. (N.T., at 23, 50–51, 70, 104.) *See Commonwealth v. Nichols*, 692 A.2d 181 (Pa.Super.1997) (holding specific intent to cause serious bodily injury may be inferred from the use of a deadly weapon upon a vital part of the body). Appellant, an expert marksman, also fired a shot into Burger's occupied car at close range, causing a bullet to narrowly miss Mandy McConnell who was sitting in the back seat. (N.T., at 24.) It can be inferred that appellant intended to cause serious bodily injury to Mandy because the bullet

6. We have reversed appellant's issues one and two for ease of discussion.

he fired into the car missed her by only three inches. *See Commonwealth v. Thompson*, 559 Pa. 229, 739 A.2d 1023 (1999), *cert. denied*, 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000) (finding sufficient evidence presented to convict appellant of aggravated assault where appellant shot at and narrowly missed the victim); *see also Commonwealth v. Woods*, 710 A.2d 626 (Pa.Super.1998) (holding specific intent to harm may be inferred from the circumstances and that finding is a matter for the jury). Further, testimony indicates that when Mandy and Burger were running for safety, appellant continued to shoot in their direction. (N.T., at 28, 56–57, 72–73.) This conduct evidences appellant's intent to cause them serious bodily injury. The jury, as finder of fact, properly found beyond a reasonable doubt that appellant possessed the intent necessary to sustain a conviction for aggravated assault as to both Mandy McConnell and Burger.

¶ 6 Next, appellant submits the Commonwealth improperly charged him under 18 Pa.C.S.A. § 2702(a)(1), instead of § 2702(a)(4), which he contends, is more applicable to his conduct because it contains the phrase "injury to another *with a deadly weapon.*" *Id.* (emphasis added).[7] By so charging, appellant argues, the Commonwealth was able, following his conviction, to seek the mandatory five-year prison term as provided under 42 Pa. C.S.A. § 9712 **Sentences for offenses committed with firearms.** Such mandatory sentence would not be available had the Commonwealth secured a conviction under § 2702(a)(4).[8]

■ ¶ 7 The charging function is inherent in the duties of the district attorney, an elected official, and is governed by the credible facts which, in the judgment of the district attorney, can be established beyond a reasonable doubt at trial and are consistent with the policies of that office, including relevant standards applicable to the initiation of charges. *See* 42 Pa.C.S.A. § 8931, **Indictment and information, (d) Duties of prosecuting attorneys;** *see also* ABA **Standard for Criminal Justice, Prosecution Function Standards, 3–3.9 Discretion in the Charging Decision.** It is axiomatic that neither the trial court nor an appellate court may interfere with this function of the prosecution provided the appellant has not established fraud, prejudice or bias in the district attorney's election of the individual charges. *See Commonwealth v. Larsen*, 452 Pa.Super. 508, 682 A.2d 783 (1996) (holding the district attorney is vested with the sole discretion as to what crime(s) will be charged, and that discretion will not be disturbed absent a gross abuse of discretion); *cf. In re Private Complaint of Petitioner Donald*

---

7. Section 2702(a)(1) of the Crimes Code specifies "**serious** bodily injury," (emphasis added), while § 2702(a)(4) states, "[a] person is guilty of aggravated assault if he: (4) attempts to cause or intentionally or knowingly causes **bodily injury** to another with a deadly weapon." *Id.*, (emphasis added).

8. A review of the certified record before us reveals appellant failed to file a pretrial motion to quash the information wherein he avers he was charged improperly with § 2702(a)(1) of the Crimes Code. Accordingly, this issue is arguably waived due to appellant's failure to raise the challenge at his first opportunity in a pretrial motion to quash.

*Compare* Pa.R.Crim.P. 578, **Omnibus Pretrial Motion for Relief**, *with Commonwealth v. Parmar*, 448 Pa.Super. 470, 672 A.2d 314 (1996), *appeal granted*, 546 Pa. 640, 683 A.2d 879 (1996), *affirmed*, 551 Pa. 318, 710 A.2d 1083 (1998) (holding that while an appellant's claim he was charged with the wrong crime may be waived due to his failure to properly preserve the issue by filing a pretrial motion to quash, the waiver doctrine will not be applied where the statutes in question do not irreconcilably conflict on their face). We have elected to address the merit of appellant's argument.

*Adams, Appeal of Donald Adams,* 764 A.2d 577 (Pa.Super.2000) (reasoning the district attorney's decision to not prosecute a private complaint, based on policy considerations, will not be disturbed absent a showing of bad faith, fraud or unconstitutionality).

¶ 8 As part of the charging function and judgment permissibly exercised by the district attorney, he may properly charge a category of the crime, which calls for a mandatory sentence rather than one that permits discretion by the trial judge. We find no error on the part of the prosecutor herein in electing to proceed with a § 2702(a)(1) charge that resulted in the imposition of a mandatory sentence. This is particularly proper and appropriate in a case such as this which easily could have resulted in the serious injury or the deaths of the victims, and which has implications for additional possible attacks arising out of passion and rejection if a less severe penalty had been sought. The evidence and testimony presented supported the Commonwealth's decision to proceed only under § 2702(a)(1), as the appellant's conduct, in carelessly brandishing and shooting a firearm, clearly displayed an attempt to cause "serious bodily injury" as contemplated by the statute. The jury herein, sitting as the trier of fact, exercised its specific function and ascertained that the evidence presented established beyond a reasonable doubt that appellant was guilty under § 2702(a)(1).

¶ 9 Lastly, we note that even if the Commonwealth had charged and successfully convicted appellant under § 2702(a)(4), a felony of the second degree, rather than § 2702(a)(1), a felony of the first degree, a five to ten year sentence would still have been within the discretion of the sentencing court. An individual convicted of a second degree felony, "may be sentenced to a term of imprisonment, the maximum of which is not more than ten years." 18 Pa.C.S.A. § 106(b)(3), **Classes of offenses, Classification of crimes.** We conclude, therefore, the sentence imposed was mandatory, a consequence of appellant's reckless, intentional and knowing actions, and properly initiated within the charging function of the prosecutor.

¶ 10 Next, appellant argues the aggravated assault and REAP verdicts are impermissibly inconsistent. We disagree. Consistency is not required in criminal verdicts and the fact-finder's decision will not be disturbed so long as sufficient evidence existed for conviction. *Commonwealth v. Peer,* 454 Pa.Super. 109, 684 A.2d 1077 (1996). It is well settled that REAP [9] is a lesser included offense of aggravated assault,

> Once the prosecution has proved that an **individual caused or attempted to cause serious bodily injury under circumstances manifesting an extreme indifference to human life,** it also has established that the same person recklessly engaged in conduct that placed or may have placed another person in danger of death or serious bodily injury. Every element of reckless endangerment is subsumed in the elements of aggravated assault.

*Commonwealth v. Dobbs,* 452 Pa.Super. 488, 682 A.2d 388, 391 (1996) (emphasis added).

¶ 11 Appellant argues *Dobbs* is distinguishable from this case. We disagree. He contends the issue here is "whether an individual can simultaneously

---

9. A person commits a misdemeanor of the second degree if he recklessly engages in conduct, which places or may place another person in danger of death or serious bodily injury. 18 Pa.C.S.A. § 2705, **Recklessly endangering another person.**

disregard a known risk of the effects of his conduct, *and* specifically desire that such conduct produce serious bodily injury. The two states of mind are simply incapable of co-existing simultaneously." (Appellant's brief at 17.) Appellant has completely misread *Dobbs*. In *Dobbs*, the Court rejected the same intent argument appellant makes here stating, *inter alia*, "[c]learly, the requirement of a specific mental state in a greater crime does not prevent a crime requiring merely reckless conduct from being a lesser included offense." *Id.* As discussed above, there was sufficient evidence to convict appellant of aggravated assault, accordingly we find appellant was also properly convicted of REAP. The verdicts were not impermissibly inconsistent.

¶ 12 Next, appellant contends the evidence was insufficient to convict him of terroristic threats as against Bender, Burger or Mandy McConnell. Appellant argues, "[t]here was no articulated threat to commit a crime of violence to any of the individuals at the Wal–Mart parking lot." (Appellant's brief at 24.)

¶ 13 In relevant part, "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706, **Terroristic threats** (a) **Offense defined** (1). "Accordingly, the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Tizer*, 454 Pa.Super. 1, 684 A.2d 597, 600 (1996).

¶ 14 The evidence shows appellant pointed his gun in the faces of both Burger and Bender. Pointing the gun at Bender he said, "Go the f--- away." (N.T., at 71.) Appellant argues that merely his use of offensive language does not rise to the level of a terroristic threat. While we agree that offensive language alone is not sufficient, appellant overlooks the fact that he simultaneously pointing a loaded gun in the victim's face. Together, this language and conduct implies the threat that had Bender not left, he would have been shot. Similarly, the holding of the gun in Burger's face conveyed a threat that he too would be shot if he did not act as appellant wanted. In *Appeal of Larry M. Maloney*, 431 Pa.Super. 321, 636 A.2d 671 (1994), the Court concluded that the pointing of a gun at occupants of a passing car was sufficient to support a conviction for terroristic threats, even absent a verbal threat. In the matter before us, the jury heard evidence appellant pointed his gun directly at Bender, Burger and Mandy McConnell. (N.T., at 25, 54, 55, 70 & 104.) Appellant also shot in the direction of Burger and McConnell, establishing that the threats were not idle and the intent to terrorize was real. *Id.* at 28, 72–73. The jury's verdict as to terroristic threats was proper.

¶ 15 Finally, having considered appellant's last issue, we conclude appellant should be given credit for the eighteen (18) days he spent under house arrest.[10] While this case has been on appeal, the Pennsylvania Supreme Court decided the case of *Commonwealth v. Chiappini*, 566 Pa. 507, 782 A.2d 490 (2001), and held that a home confinement/electronic monitoring program constitutes time spent in "custody" for purposes of 42 Pa.C.S.A. § 9760,

---

**10.** The term "house arrest" refers to a program that consists of home confinement and electronic monitoring.

**Credit for time served.** We hereby remand and direct that the trial court amend the November 29, 2000 aggregate judgment of sentence to reflect 18 days credit for time served.

¶ 16 Accordingly, the judgment of sentence is vacated and this matter is remanded for the sole purpose of recalculating the term of the sentence, giving credit for 18 days time served. In all other respects the judgment of sentence is affirmed.

¶ 17 Jurisdiction relinquished.